**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SERVSTOR TECHNOLOGIES LLC, | Case No. |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| FUJITSU LTD. and FUJITSU AMERICA INC., | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff ServStor Technologies LLC ("ServStor" or "Plaintiff"), for its Complaint against Defendants Fujitsu Ltd. and Fujitsu America Inc. (collectively "Fujitsu" or "Defendants") alleges as follows:

**THE PARTIES**

1. ServStor is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 104 E. Houston Street, Suite 190, Marshall, Texas 75670.

2. Upon information and belief, Defendant Fujitsu Ltd. is a corporation organized and existing under the laws of Japan, with its principal place of business located at Shidome City Center 1-5-2 Higashi-Shimbashi, Minato-ku Tokyo 105-7123, Japan, and may be served pursuant to the provisions of the Hague Convention. Upon information and belief, Defendant Fujitsu America Inc. is a California corporation with a regular and established place of business in Colin County, Texas, at 2791 Telecom Pkwy, Richardson, TX 75082. Fujitsu is a leading manufacturer and seller of computers and server equipment in the world and in the United States. Upon

information and belief, Fujitsu does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

## JURISDICTION

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendants. Defendants regularly conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 1400(b). Defendant Fujitsu Ltd. is not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). Upon information and belief, Defendant Fujitsu America Inc. maintains a regular and established place of business at 2791 Telecom Pkwy, Richardson, TX 75082 in Colin County within this judicial district. Additionally, upon information and belief, Fujitsu also maintains a facility at 2801 Telecom Pkwy, Richardson, TX 75082, also within this judicial district. Upon information and belief, Defendants have committed the acts of infringement alleged herein within this judicial district.

6. Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

**PATENTS-IN-SUIT**

7. On February 14, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,000,010 (the "'010 Patent") entitled "System and Method for Caching Web Pages on a Management Appliance for Personal Computers." A true and correct copy of the '010 Patent is available at: https://pdfpiw.uspto.gov/.piw?docid=07000010.

8. On January 11, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,870,271 (the "'271 Patent") entitled "Disk Drive Partitioning Methods and Apparatus." A true and correct copy of the '271 Patent is available at: https://pdfpiw.uspto.gov/.piw?docid=07870271.

9. On March 13, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,191,274 (the "'274 Patent") entitled "Method and System for Providing Independent Server Functionality in a Single Personal Computer." A true and correct copy of the '274 Patent is available at: https://pdfpiw.uspto.gov/.piw?docid=07191274.

10. On May 18, 2004, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,738,930 (the "'930 Patent") entitled "Method and System for Extending the Functionality of an Environmental Monitor for an Industrial Personal Computer.". A true and correct copy of the '930 Patent is available at: https://pdfpiw.uspto.gov/.piw?docid=06738930.

11. On December 18, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,310,750 (the "'750 Patent") entitled "Method and System for Extending the Functionality of an Environmental Monitor for an Industrial Personal Computer." A true and correct copy of the '750 Patent is available at: https://pdfpiw.uspto.gov/.piw?docid=07310750.

12. ServStor is the sole and exclusive owner of all right, title, and interest in the '010

Patent, the '274 Patent, the '930 Patent, the '750 Patent, and the '271 Patent (collectively, the "Patents-in-Suit") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit.  ServStor also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

13. The Patents-in-Suit generally pertain to systems and methods for use in computer and server storage and structure.

14. The '010 Patent, the '930 Patent, and the '750 Patent generally relate to technology for a system for monitoring and managing server computers.  The technology described by the '010 Patent, the '930 Patent, and the '750 Patent was developed by inventors Christopher M. Jensen, David T. Medin, and Matthew J. Poduska at Crystal Group Inc.  For example, the technology described in the '010 Patent, the '930 Patent, and the '750 Patent is implemented by functionality within servers pertaining to monitoring and alarm card functionality.

15. The '274 Patent generally relates to technology for providing independent server functionality for computer peripherals such as, but not limited to, computer and server disk drives.  The technology described by the '274 Patent was developed by inventor Matthew J. Poduska at Crystal Group Inc.  For example, the technology is implemented by infringing servers that utilize independent circuit cards.

16. The '271 Patent generally relates to technology for disk drive partitioning of computer peripherals, such as computer and server disk drives.  The technology described by the '271 Patent was developed by inventors Charles Frank, Thomas Ludwig, Thomas Hanan, and William Babbitt.

17. Fujitsu has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import products, including servers and racks, that utilize the above technology and associated software that infringes the Patents-in-Suit. Fujitsu has also infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import products, including servers, that utilize drive technology and associated software that infringes the Patents-in-Suit. Such Fujitsu products include Fujitsu servers, such as the Fujitsu Primergy BX900 S2 as well asFujitsu server products and components, such as Fujitsu Management utilities (including, but to limited to, the Fujitsu ServerView Resource Orchestrator).

> **Data Sheet** FUJITSU Server PRIMERGY BX900 S2 Blade System
>
> # Features & Benefits
>
> | Main Features | Benefits |
> |---|---|
> | **Dynamic Power & Cooling**<br>■ Using our Cool-safe™ cooling concept, combined with 94% efficient power supplies and the enhanced ServerView power management software, it ensures maximum dynamic power & cooling. Combined with the 94% PSUs, the holistic power management enables for most accurate control of predefined maximum chassis power consumption. | ■ Save energy costs as never before - guaranteed |
> | **Dynamic Virtualization**<br>■ Equipped with server blades that are utilizing CPUs out of the latest generation Intel® Xeon® processor E5-2400v2 / E5-2600v2 product family, very large memory capacities and extended I/O performance, the PRIMERGY BX900 S2 is once again the optimal system for any virtualization scenario on the one hand, and for resource and performance hungry applications on the other hand. | ■ Easily deploy more or larger virtual and physical machines than ever before and in this way increase your IT performance and consolidation ratio. |
> | **Dynamic High Availability**<br>■ Due to its fully redundant design (management blades, connection blades, fans, PSUs), and in combination with ServerView Resource Orchestrator (ROR), the PRIMERGY BX900 S2 can completely protect itself against any possible failure; at the same time it excels with the fastest automatic recovery, and with a flexible allocation of its available resources to services, according to requirements. | ■ Best availability, most effective server protection and the agility to adapt to changing requirements. |
> | **Dynamic Scalability**<br>■ With space for up to 18 server and/or storage Blades, 8 connection blades, 6 power supply units and 2 management blades in a 10U high chassis, the PRIMERGY BX900 S2 incorporates the highest density. Combined with chassis interconnectivity and switch blade stacking, the system allows highly flexible scaling and simplified management. | ■ Complete investment protection and flexible growth scenarios. |
> | **New Performance level**<br>■ PRIMERGY BX900 S2 supports high speed Infiniband (FDR Infiniband) with 56 Gbit/s bandwidth per port at a new level of payload efficiency; the encoding algorithm of 64b/66b instead of 8b/10b with QDR Infiniband results in a more than 70% enhanced ratio of net to gross data rate. | ■ Get the most out of your investment by operating at highest efficiency |

[1]

## COUNT I
### (Infringement of the '010 Patent)

18. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19. ServStor has not licensed or otherwise authorized Defendants to make, use, offer

---

[1] https://www.fujitsu.com/ca/en/imagesgig5/ds-py-bx900-s2.pdf.

6

for sale, sell, or import any products that embody the inventions of the '010 Patent.

20. Defendants have and continue to directly infringe the '010 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '010 Patent. Such products include computer devices, such as servers, that assess various computer status information. Upon information and belief, such Fujitsu products include at least Fujitsu servers, such as the Fujitsu Primergy BX900 S2 as well as Fujitsu server products and components, such as Fujitsu Management utilities (including, but to limited to, the Fujitsu ServerView Resource Orchestrator).

21. For example, Defendants have and continue to directly infringe at least claim 1 of the '010 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include computers and servers with the capability to report various computer status information including, but not limited to, temperature, motor, and power status, among other features.

22. For example, the Fujitsu Primergy BX900 S2 comprises an apparatus for managing characteristics of a computer having a host CPU. The Fujitsu Primergy BX900 S2 comprises a management appliance, disposed in said computer and, at least indirectly, coupled to said host CPU. The management appliance has a management appliance microprocessor therein which runs a management appliance microserver, capable of handling web and IP-based content. The management appliance comprises an out-of-band connection to a network. The management appliance also comprises an internal connection to the host CPU. The host CPU, in combination with a web server in said computer, is configured to generate host computer monitoring web pages. The management application microserver, via a host CPU to management appliance connection,

monitors the host computer monitoring web pages. The management appliance reports, via the out-of-band connection, to an external network, status information contained in said host computer monitoring web pages.

23. Defendants have and continue to indirectly infringe one or more claims of the '010 Patent by knowingly and intentionally inducing others, including Fujitsu customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as servers that report computer status information.

24. Defendants, with knowledge that these products, or the use thereof, infringe the '010 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '010 Patent by providing these products to end-users for use in an infringing manner.

25. Defendants have induced infringement by others, including end- users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '010 Patent, but while remaining willfully blind to the infringement.

26. ServStor has suffered damages as a result of Defendants' direct and indirect infringement of the '010 Patent in an amount to be proved at trial.

27. ServStor has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '010 Patent for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '930 Patent)

28. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

29.     ServStor has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '930 Patent.

30.     Defendants have and continue to directly infringe the '930 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '930 Patent. Such products include computer devices, such as servers, that assess various computer status information. Upon information and belief, such Fujitsu products include at least Fujitsu servers, such as the Fujitsu Primergy BX900 S2 as well as Fujitsu server products and components, such as Fujitsu Management utilities (including, but to limited to, the Fujitsu ServerView Resource Orchestrator).

31.     For example, Defendants have and continue to directly infringe at least claim 1 of the '930 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include computers and servers with the capability to report various computer status, including, but not limited to, temperature, motor, and power status, among other features.

32.     For example, the Fujitsu Primergy BX900 S2 comprises an apparatus for monitoring environmental characteristics of an individual personal computer, of the type having a host CPU device or the equivalent thereof. The Fujitsu Primergy BX900 S2 also includes an alarm card, disposed in said industrial personal computer and coupled with a host CPU device. The alarm card comprises an alarm card microprocessor therein which runs a management appliance microserver capable of handling web and IP-based content. The alarm card further comprises an out-of-band connection to a network. The alarm card also comprises an internal connection to the host CPU. The host CPU may contain IP-based content. The host CPU is configured to generate monitoring web pages. Via the internal connection, the alarm card microserver monitors the host

CPU web-based content and the host CPU. Via the out-of-band connections, the alarm card reports, to an external network, status information contained in the web-enabled content on the host CPU.

33. Defendants have and continue to indirectly infringe one or more claims of the '930 Patent by knowingly and intentionally inducing others, including Fujitsu customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as computers and servers that assess a various computer status.

34. Defendants, with knowledge that these products, or the use thereof, infringe the '930 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '930 Patent by providing these products to end-users for use in an infringing manner.

35. Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '930 Patent, but while remaining willfully blind to the infringement.

36. ServStor has suffered damages as a result of Defendants' direct and indirect infringement of the '930 Patent in an amount to be proved at trial.

37. ServStor has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '930 Patent for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT III
**(Infringement of the '750 Patent)**

38. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

39. ServStor has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '750 Patent.

40. Defendants have and continue to directly infringe the '750 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '750 Patent. Such products include computer devices, such as servers, that assess various computer status information. Upon information and belief, such Fujitsu products include at least Fujitsu servers, such as the Fujitsu Primergy BX900 S2 as well as Fujitsu Fujitsu server products and components, such as Fujitsu Management utilities (including, but to limited to, the Fujitsu ServerView Resource Orchestrator).

41. For example, Defendants have and continue to directly infringe at least claim 1 of the '930 Patent by making, using, offering to sell, selling, and/or importing into the United States products, such as computers and servers that assess various computer status information.

42. For example, the Fujitsu Primergy BX900 S2 comprises an apparatus for monitoring environment characteristic of an industrial personal computer, of the type having a host CPU device or the equivalent thereof. The Fujitsu Primergy BX900 S2 includes an alarm card, disposed in said industrial personal computer and coupled with a host CPU. The alarm card comprises an alarm card microprocessor therein which runs an alarm card server, capable of handling web-based content. The alarm card comprises an out-of-band connection to a network. The alarm card also comprises and internal connection to the host CPU. Via the internal connection, the alarm card server monitors the host CPU web-based content on the host CPU. Via the out-of-band connection, the alarm card reports, to an externa network, information contained in web-based content on the host CPU.

43. Defendants have and continue to indirectly infringe one or more claims of the '750 Patent by knowingly and intentionally inducing others, including Fujitsu customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as computers and servers that assess various computer status information.

44. Defendants, with knowledge that these products, or the use thereof, infringe the '750 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '750 Patent by providing these products to end users for use in an infringing manner.

45. Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '750 Patent, but while remaining willfully blind to the infringement.

46. ServStor has suffered damages as a result of Defendants' direct and indirect infringement of the '750 Patent in an amount to be proved at trial.

47. ServStor has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '750 Patent for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT IV
**(Infringement of the '274 Patent)**

48. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

49. ServStor has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '274 Patent.

50. Defendants have and continue to directly infringe the '274 Patent, either literally or

under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '274 Patent. Such products include server configurations where each server communicates independently of one another. Upon information and belief, such Fujitsu products include at least Fujitsu servers, such as the Fujitsu Primergy BX900 S2 as well as Fujitsu server products and components, such as Fujitsu Management utilities (including, but to limited to, the Fujitsu ServerView Resource Orchestrator).

51. For example, Defendants have and continue to directly infringe at least claim 1 of the '274 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing technology.

52. For example, the Primergy BX900 S2 is a computer system. The Primergy BX900 S2 comprises a chassis, having a plurality of slots thereon each configured for receiving one of a plurality of planar shaped circuit cards therein. The Primergy BX900 S2 further comprises a shroud coupled to said chassis to form an enclosure about said plurality of planar shaped circuit cards. The plurality of planar shaped circuit cards is each configured for providing an independent dedicated server function. Each said plurality of planar circuit cards being configured so as to be free from any direct communication connection with any inter-card bus inside said enclosure.

53. Defendants have and continue to indirectly infringe one or more claims of the '274 Patent by knowingly and intentionally inducing others, including Fujitsu customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology.

54. Defendants, with knowledge that these products, or the use thereof, infringe the '274 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and

continue to knowingly and intentionally induce, direct infringement of the '274 Patent by providing these products to end-users for use in an infringing manner.

54. Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '274 Patent, but while remaining willfully blind to the infringement.

56. ServStor has suffered damages as a result of Defendants' direct and indirect infringement of the '274 Patent in an amount to be proved at trial.

57. ServStor has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '274 Patent for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT V
### (Infringement of the '271 Patent)

58. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

59. ServStor has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '271 Patent.

60. Defendants have and continue to directly infringe the '271 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '271 Patent. Such products include server partitions that are separately addressed by distinct IP addresses. Upon information and belief, such Fujitsu products include at least Fujitsu servers, such as the Fujitsu Primergy BX900 S2 as well as Fujitsu server products and components, such as Fujitsu Management utilities (including, but to limited to, the Fujitsu ServerView Resource Orchestrator).

61. For example, Defendants have and continue to directly infringe at least claim 1 of the '271 Patent by making, using, offering to sell, selling, and/or importing into the United States infringing technology.

62. For example, upon information and belief, the Fujitsu Primergy BX900 S2 is a computer system. The Fujitsu Primergy BX900 S2 comprises a storage medium. The Fujitsu Primergy BX900 S2 further comprises a network interface configured to couple the Fujitsu Primergy BX900 S2 to a network. The Fujitsu Primergy BX900 S2 further comprises a storage element communicatively coupled to the storage medium and the network interface. Upon information and belief, the Fujitsu Primergy BX900 S2's storage element is configured to receive, via the network interface, a request for a partition allocation, the request including a name. Upon information and belief, the Fujitsu Primergy BX900 S2's storage element is further configured to create and allocate a partition of the storage medium based at least in part on the request. Upon information and belief, the Fujitsu Primergy BX900 S2's storage element is further configured to obtain, from a dynamic host configuration protocol (DHCP) server, an internet protocol (IP) address for the partition of the storage medium. Upon information and belief, the Fujitsu Primergy BX900 S2's storage element is further configured to associate the name with the IP address.

63. Defendants have and continue to indirectly infringe one or more claims of the '271 Patent by knowingly and intentionally inducing others, including Fujitsu customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as server partitions that are separately addressed by distinct IP addresses.

64. Defendants, with knowledge that these products, or the use thereof, infringe the '271 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and

continue to knowingly and intentionally induce, direct infringement of the '271 Patent by providing these products to end-users for use in an infringing manner.

65. Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '271 Patent, but while remaining willfully blind to the infringement.

66. ServStor has suffered damages as a result of Defendants' direct and indirect infringement of the '271 Patent in an amount to be proved at trial.

67. ServStor has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '271 Patent for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, ServStor prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate ServStor for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

      d.      Entry of judgment declaring that this case is exceptional and awarding ServStor its costs and reasonable attorney fees under 35 U.S.C. § 285; and

      e.      Such other and further relief as the Court deems just and proper.

Dated: July 7, 2022

Respectfully submitted,

/s/ *Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue, Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
830 Morris Turnpike
Short Hills, New Jersey 07078
Telephone: (973) 535-0920
Facsimile (973) 535-0921

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

*ATTORNEYS FOR PLAINTIFF*

*SERVSTOR TECHNOLOGIES LLC*

18

*SERVSTOR TECHNOLOGIES LLC*